UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARMANDO RIVERA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CREMA COFFEE COMPANY LLC, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-01531-VKD<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 48 |

Plaintiff Armando Rivera sues for alleged violations of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.; the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53; and Part 5.5 of the California Health and Safety Code, Cal. Health & Safety Code §§ 19955 et seq. Dkt. No. 41. He claims that, due to architectural barriers at the Crema Coffee Roasting Company ("the Coffeehouse") in San Jose, California, he was denied full and equal access to the facilities during his visit there on January 9, 2018.

Mr. Rivera now moves for summary judgment on the ADA and Unruh Act claims only. Dkt. No. 48. Defendants Crema Coffee Company LLC d/b/a Crema Coffee Roasting Company ("Crema Coffee") and Ali Farhang oppose.[1] Dkt. No. 49. The Court heard oral argument on Mr. Rivera's motion on January 28, 2020. Dkt. No. 51. Having considered the parties' submissions and arguments made at the hearing, the Court grants in part and denies in part Mr. Rivera's motion

---

[1] Along with their opposition, defendants also filed a cross-motion for summary judgment on January 7, 2020. Dkt. No. 49-16. Defendants' deadline for a motion for summary judgment was December 24, 2019. Dkt. No. 38. Because the cross-motion is untimely, the Court does not consider it.

for summary judgment.

## I. BACKGROUND

Unless otherwise indicated, the following facts are undisputed.

Mr. Rivera is a T-5 paraplegic who is unable to walk and must use a wheelchair for mobility. Dkt. No. 48-3 ¶ 2. The California Department of Motor Vehicles has issued him a permanent disabled person placard. *Id.* ¶ 3.

At the time of Mr. Rivera's visit to the Coffeehouse on January 9, 2018, Crema Coffee owned and operated the Coffeehouse premises, which it leased from Mr. Farhang. Dkt. No. 49-7. Crema Coffee's lease includes the building in which it is housed, the patio in front of the building, and the parking spots immediately adjacent to and behind the building. *Id.* at 2. The lease excludes a second building located on the site and all parking spots adjacent to the second building. *Id.* at 2–3.

Mr. Rivera visited the Coffeehouse on January 9, 2018. Dkt. No. 41 ¶ 10. He was unable to enter the Coffeehouse because the only path of travel into the Coffeehouse includes two sets of stairs, which he could not navigate in a wheelchair. *Id.* The first set of stairs leads from the sidewalk to the Coffeehouse patio, and the second set leads from the patio to the Coffeehouse entrance. Dkt. No. 48 at 2; Dkt. No. 48-5 ¶¶ 9, 10, Exs. B, C. He filed this action on March 9, 2018. Dkt. No. 1.

On August 14, 2018, Mr. Rivera's access expert, Michael Bluhm, inspected the Coffeehouse's facilities. Dkt. No. 48-5 ¶ 8. At that time, Mr. Bluhm noted that a blue sign had been posted at the junction of the sidewalk and the first set of stairs leading to the patio. *Id.* ¶ 11. The blue sign contained the International Symbol of Access ("ISA") of a person in a wheelchair and the following text at the bottom: "We are pleased to provide assistance[.] If you need help please ask." *Id.* The sign displayed no information advising customers about how to communicate their need for assistance with Coffeehouse personnel. *Id.* Mr. Bluhm also observed a parking spot behind and adjacent to the Coffeehouse, which contained a "marginally" blue painted access aisle and stall line. *Id.* ¶ 17, Ex. F. Mr. Bluhm observed no signage concerning the status of that parking spot. *Id.*

2

Following Mr. Bluhm's first inspection, Mr. Rivera filed a first amended complaint with a lengthy list of barriers to access. Dkt. No. 41 ¶ 11. The parties agree that all of the barriers identified have since been remediated or otherwise addressed, leaving two issues in dispute: (1) the inaccessibility of the path of travel into the Coffeehouse and whether an alternative method of access exists, and (2) the lack of van-accessible parking. Dkt. No. 48 at 4–5; Dkt. No. 49 at 1–2; Dkt. No. 50 at 1.

On October 29, 2018, Mr. Bluhm inspected the Coffeehouse's facilities a second time for the purpose of ascertaining whether any previously identified violations had been addressed. Dkt. No. 48-5 ¶ 8. With respect to the path of travel, Mr. Bluhm observed that a white sticker with black text had been added to the top corner of the ISA sign at the junction of the sidewalk and the first set of stairs leading to the patio. *Id.* ¶ 12, Ex. D. The sticker was located in the top left corner of the sign and contained a phone number. *Id.* With respect to parking, Mr. Bluhm observed that some of the blue parking stall paint markings had been painted over, and white stall line markings had been added. *Id.* ¶ 18, Ex. G. The parking area now also had a sign that stated, "No Parking." *Id.*

On October 8, 2019, Mr. Rivera deposed Duc Lam, Crema Coffee's corporate designee.[2] Dkt. No. 48-1, Ex. D. Mr. Lam testified that Crema Coffee accommodated persons in wheelchairs by either (1) having employees physically carry the wheelchair and its occupant up and into the Coffeehouse, or (2) offering curbside service to customers who cannot navigate the stairs into the Coffeehouse. Dkt. No. 48-1, Ex. D at 82:2-14, 100:25–101:2, 102:3-20.

On December 24, 2019, Mr. Rivera filed the motion for summary judgment now before the Court. Dkt. No. 48.

At the January 28, 2020 hearing on Mr. Rivera's motion, the parties informed the Court that, shortly before the hearing, Crema Coffee had permanently closed the Coffeehouse with no

---

[2] The deposition transcript and Mr. Rivera's briefs describe Mr. Lam as the "person most knowledgeable." Dkt. 48 at 11; Dkt. No. 50 at 2; Dkt. No. 48-1, Ex. D. The Court construes this description to mean that Mr. Lam testified as Crema Coffee's corporate representative. *See* Dkt. No. 49-1 ¶ 7; *see also* Dkt. No. 49-1, Ex. F at ECF pp. 2, 13, 16, 27 (identifying Mr. Lam as a signatory tenant on the Coffeehouse lease).

3

plan to reopen at that location. Dkt. No. 51. Defense counsel also represented that the owner, Mr. Farhang, intended to lease the property to other tenants, but it was unclear to whom or for what purpose. *Id.*

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248–49.

## III. DISCUSSION

### A. ADA Claim

Title III of the ADA prohibits discrimination by places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a

4

failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id*. § 12182(b)(2)(A)(iv). "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id*. § 12181(9).

Defendants contend that Mr. Rivera's ADA claim is now moot because the Coffeehouse has permanently ceased operations, and they urge the Court to deny summary judgment as to that claim. Before the Court may consider the substance of Mr. Rivera's ADA claim, it must first resolve the threshold issue of mootness and whether this Court possesses subject matter jurisdiction over the action. *See, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."); *Price v. U.S. Gen. Servs. Admin.*, 894 F.2d 323, 324 (9th Cir. 1990) ("Before we may reach the merits, we must first consider whether the district court had subject matter jurisdiction over [the plaintiff's] claims.").

A claim may become moot if (1) subsequent events have made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998) (citing *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 854 (9th Cir. 1985)). In *Kohler v. Southland Foods, Inc.*, the Ninth Circuit affirmed the district court's grant of summary judgment to defendants because the plaintiff's claim for prospective injunctive relief under the ADA became moot once the restaurant ceased operation. 459 F. A'ppx 617, 618 (9th Cir. 2011). Here, the parties do not dispute that the Coffeehouse is now permanently closed with no plans to reopen. Dkt. No. 51. Because the only remedy available to Mr. Rivera under Title III is injunctive relief, the permanent closure of the Coffeehouse renders that prospective relief moot. 42 U.S.C. § 12188; *Kohler*, 459 F. App'x at 618; *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III."); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) ("A request for injunctive relief remains live only so long as there is some present harm left to enjoin.") (quoting *Taylor v.*

5

*Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)) (internal quotation marks omitted). Accordingly, the Court dismisses the ADA claim as moot.

### B.     Unruh Act Claim

#### 1.     Supplemental jurisdiction

With respect to his state law claim under the Unruh Act, Mr. Rivera argues that the closure of the Coffeehouse does not moot his claim for statutory damages arising from the barriers encountered during his January 2018 visit, and he asks the Court to exercise supplemental jurisdiction with respect to that claim. A district court "may decline to exercise supplemental jurisdiction" if, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). At the same time, the court has discretion to keep the state law claims, taking into account considerations of "judicial economy, convenience, fairness, and comity." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)). Given the advanced stage of this action and the parties' substantial efforts to brief and argue the merits of Mr. Rivera's motion for summary judgment—all of which occurred before the Coffeehouse's abrupt closure—the Court concludes that considerations of judicial economy, convenience, and fairness to all parties supports the Court's exercise of its discretion to retain jurisdiction of Mr. Rivera's Unruh Act claim. *See, e.g.*, *Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 910–11 (N.D. Cal. 2019) (finding that closure of spa mooted plaintiff's ADA claim and exercising supplemental jurisdiction over plaintiff's Unruh Act claim). The Court is aware of no considerations of comity to the state court that would weigh against this Court's continued exercise of jurisdiction over Mr. Rivera's Unruh Act claim. *See Carnegie-Mellon Univ.*, 484 U.S. at 352 (1988) (discussing potential comity concerns).

#### 2.     Inaccessible path of travel

Having resolved the question of the Court's jurisdiction, the Court now addresses the merits of Mr. Rivera's motion with respect to the Unruh Act claim. Unlike Mr. Rivera's ADA claim, this claim is not moot "[b]ecause a claim for damages under the Unruh Act looks to past harm." *Arroyo v. Aldabashi*, No. 16-CV-06181-JCS, 2018 WL 4961637, at *5 (N.D. Cal. Oct. 15,

2018); *see also Johnson*, 401 F. Supp. 3d at 911–13 (adjudicating the merits of plaintiff's Unruh Act claim after finding his ADA claim moot). Mr. Rivera moves for summary judgment that defendants violated the Unruh Act based on conduct that violates Title III of the ADA. Dkt. No. 48 at 20–21; Cal. Civ. Code § 51(f) ("Any violation of the ADA necessarily constitutes a violation of the Unruh Act.").

A violation of Title III of the ADA requires a showing that (1) Mr. Rivera is disabled within the meaning of the ADA; (2) defendants are private individuals or entities that own, lease, or operate a place of public accommodation; and (3) defendants denied Mr. Rivera public accommodations because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Where the alleged ADA violation is based on architectural barriers, Mr. Rivera "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018) (citations omitted). Where the removal of a barrier is not readily achievable, Mr. Rivera may still prove discrimination by showing that defendants failed "to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

The parties do not dispute that at the time Mr. Rivera visited the Coffeehouse, he was disabled within the meaning of the ADA, or that the Coffeehouse was a place of public accommodation. *See* Dkt. No. 49; 42 U.S.C. § 12181(7)(B) (listing "a restaurant, bar, or other establishment serving food or drink" as a "public accommodation"). Defendants also do not dispute that they are private individuals or entities that owned, leased, or operated the Coffeehouse at the time of Mr. Rivera's visit. *Id.*

As discussed above, Mr. Rivera says that on January 9, 2018, he was denied access to the Coffeehouse because there was no way for him to physically enter the premises. Dkt. No. 48 at 8–9. Mr. Rivera did not attempt to park at the Coffeehouse and thus did not personally encounter any barriers to access with respect to parking. *See* Dkt. No. 41 ¶ 10; Dkt. No. 48-3 ¶¶ 5-6 ("We were strolling around the area (me in my wheelchair and my friend walking) and Crema looked

7

like a good place to get some coffee and have a chat."). Accordingly, the only barrier to access at issue with respect Mr. Rivera's claim for statutory damages under the Unruh Act is the inaccessible path of travel into the Coffeehouse.

Defendants do not address Mr. Rivera's January 9, 2018 visit in their opposition papers. *See* Dkt. No. 49. However, at the hearing, defendants did not dispute that, as of January 9, 2018, the two sets of stairs at the Coffeehouse posed an inaccessible path of travel to customers confined to a wheelchair. Dkt. No. 51.

The parties agree that removal of the two sets of stairs by adding a ramp or wheelchair lift system is not a readily achievable means to accommodate customers who use a wheelchair for mobility. *See* Dkt. No. 48 at 6–7; Dkt. No. 49 at 3; Dkt. No. 50 at 1. In these circumstances, the Court must consider whether defendants failed to provide a readily achievable alternative method to make the goods, services, facilities, privileges, advantages, or accommodations of the Coffeehouse accessible. 28 C.F.R. § 36.305(a).

The parties appear to agree that providing some form of curbside service is a readily achievable alternative method of providing access to the Coffeehouse for disabled customers like Mr. Rivera, although they disagree about the necessary features of that service. Dkt. No. 48 at 16–17; Dkt. No. 51; *see also* Dkt. No. 49 at 8–9 (disputing that a buzzer/intercom system is legally required but acknowledging that Crema Coffee purchased a buzzer/intercom system anyway). However, at the hearing, defendants conceded that no form of curbside service was available on January 9, 2018 when Mr. Rivera visited the Coffeehouse. Dkt. No. 51. Rather, defendants say that a different alternative method of access *was* available to Mr. Rivera on that date: he could visit another Crema Coffee location approximately 350 yards away. Dkt. No. 48 at 9–10; Dkt. No. 49 at 5. Defendants oppose summary judgment in Mr. Rivera's favor on his Unruh Act claim solely based on the existence of this alternative method of access.[3]

Mr. Rivera argues that requiring him to go to another Crema Coffee location is not an adequate alternative method of accessing the goods, services, facilities, privileges, advantages, or

---

[3] Defendants confirmed that they do not contend that portage of wheelchair-bound customers up two sets of stairs is an adequate alternative method of access. Dkt. No. 49 at 5; Dkt. No. 51.

8

accommodations of the Coffeehouse at issue in this dispute. Dkt. No. 48 at 10. Mr. Rivera points out that another court in this district has already rejected an identical argument in *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 1062, 1085 (N.D. Cal. 2014). He also argues that defendants have not shown that the other Crema Coffee location was accessible to him either. Dkt. No. 48 at 10.

The Court agrees with Mr. Rivera that the existence of another location, even if accessible, is not an adequate alternative method of access for the facility at issue. Defendants have cited no persuasive authority to the contrary. Defendants point to 28 C.F.R. § 36.305(b), which states that "'[r]elocating activities to accessible locations' is a viable alternative method," Dkt. No. 49 at 8, but this regulation does not support defendants' argument. Defendants did not relocate any *activities* at the Coffeehouse to an accessible location; rather, they urge relocating *customers in wheelchairs* to an allegedly accessible location.

Defendants also rely on *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th, 571 (2008), as suggesting that "on the right facts a close, accessible location could" be an adequate alternative. In that case, a California Court of Appeals reversed a trial court's conclusion that access to Mervyn's new and remodeled stores excused the lack of access to its existing stores. *Californians*, 165 Cal. App. 4th at 600. In rejecting the trial court's decision, the appellate court concluded that "[n]othing in the ADA suggests that a corporate chain of department stores satisfies its obligation to make existing facilities accessible (to the extent readily achievable) by constructing new and geographically distant facilities that are accessible." *Id.* In addition, the appellate court observed that Mervyn's did not show that any of its stores—new or remodeled—provided sufficient clearance in paths of travel for those customers using wheelchairs or other mobility aids. *Id.* Thus, while *Californians* does not dispose of defendants' arguments, it affords little support for them.

The Court declines to endorse the "separate but equal" theory implied in defendants' proposed alternative method of access. The suggestion that disabled customers should be required to go to another location to be served invites comparison to long-discredited views and outcomes that are inherently unfair. *See, e.g.*, *Brown v. Bd. of Educ. of Topeka, Shawnee Cty., Kan.*, 347 U.S. 483 (1954) ("We conclude that in the field of public education the doctrine of 'separate but

9

equal' has no place. Separate educational facilities are inherently unequal."); *see also Rodriguez*, 10 F. Supp. 3d at 1085 ("[T]he mere existence of a separate La Victoria location does not suffice to make the subject property's goods and services 'available through alternative methods.'"); *cf. Molski v. Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043, 1050 (2008) (noting the "disadvantage" separate facilities may create for patrons who could be accommodated by readily achievable barrier removal).

Even if it were permissible to rely on the existence of a second Crema Coffee location as an alternative method of access, defendants provided no evidence that they ever made disabled Coffeehouse patrons aware of that second location. No signs outside the Coffeehouse informed disabled patrons that they would be served at a different location, and no one communicated that option to Mr. Rivera when he visited on January 9, 2018.

Accordingly, the Court finds that the availability of another Crema Coffee location within 350 yards of the location at issue is not an adequate alternative method of access. Because a readily achievable alternative method of providing access (i.e., curbside service) could have been used but was not when Mr. Rivera visited the Coffeehouse, the Court concludes that Mr. Rivera has shown that defendants violated the ADA and therefore the Unruh Act, and there is no genuine issue of material dispute that remains for trial. The Court grants summary judgment for Mr. Rivera on his Unruh Act claim.

### C. Requested Relief

The Unruh Act provides a minimum statutory damages award of $4,000 "for each occasion an individual is denied equal access to an establishment covered by the Unruh Act . . . ." *Ridola*, 2018 WL 2287668, at *15; Cal. Civ. Code § 52(a). A plaintiff "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *MJ Cable, Inc.*, 481 F.3d at 731.

Mr. Rivera contends that he is entitled to statutory damages of $4,000 for the inaccessible path of travel he encountered during his January 9, 2018 visit to the Coffeehouse. Dkt. No. 48 at 20–21. Although defendants dispute whether Mr. Rivera had an alternative method of access to the Coffeehouse (i.e., another Crema Coffee location), they do not oppose Mr. Rivera's claim for

statutory damages, assuming an Unruh Act violation occurred.

The Court finds that Mr. Rivera has demonstrated that he encountered access barriers during his January 9, 2018 visit to the Coffeehouse. Defendants have presented no evidence creating a genuine issue of material fact precluding summary judgment as to those matters. Accordingly, the Court awards Mr. Rivera $4,000. Defendants are jointly and severally liable for this amount. Cal. Civ. Code § 55(a) (Unruh Act statutory damages recoverable if the violation of one or more construction-related accessibility standards denied plaintiff "full and equal access to the place of public accommodation on a particular occasion").

### D. Evidentiary Objections

#### 1. Defendants' objections

Defendants object to paragraphs 12-20 of Mr. Bluhm's declaration in support of Mr. Rivera's motion for summary judgment on various bases, including that such opinions or statements are legal conclusions, lack scientific or technical methodology, lack foundation, and were not previously disclosed in Mr. Bluhm's expert reports. Dkt. No. 49-15. Defendants' separately filed objections to Mr. Bluhm's declaration do not comply with Civil Local Rule 7-3(a), which requires an opposing party to include evidentiary and procedural objections in its opposition brief. Accordingly, the Court does not consider defendants' separately filed objections. *See Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1103–04 (N.D. Cal. 2017).

#### 2. Mr. Rivera's objections

Mr. Rivera objects to paragraph 4 of the Lam declaration, which concerns the absence of an accessible parking space and a buzzer/intercom system, and to paragraphs 7 and 8 of the declaration of defendants' counsel, which concern the use of a buzzer/intercom system as a part of or in conjunction with the Coffeehouse's curbside service. Dkt. No. 50 at 11–12. Because the Court concludes that it is unnecessary to consider the accessibility of parking at the Coffeehouse or the adequacy of the Coffeehouse's curbside service in resolving Mr. Rivera's summary judgment motion, the Court does not consider the evidence to which Mr. Rivera objects and therefore need not rule on his objections.

11

## IV. CONCLUSION

Based on the foregoing, Mr. Rivera's motion for summary judgment is granted in part and denied in part as follows:

1. The motion as to the ADA claim is DENIED as moot.

2. The motion as to the Unruh Act claim is GRANTED, and defendants are jointly and severally liable for $4,000 in statutory damages.

Mr. Rivera's third claim for a violation of Part 5.5 of the California Health and Safety Code remains pending. The parties shall promptly confer about that claim to determine whether there truly are any issues that must be tried. By **March 11, 2020**, they shall submit a joint report advising the Court whether a trial as to those matters is necessary. If a trial is required, the parties are reminded that they must begin their Final Pretrial Conference submissions by March 11, 2020, in compliance with the Court's Standing Order re Pretrial Preparation.

**IT IS SO ORDERED.**

Dated: February 7, 2020

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge